UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| STEVEN AFTERGOOD | ) |
| | ) |
| Plaintiff, | ) Case No. 1:05CV01307 (RBW) |
| | ) |
| v. | ) (ECF) |
| | ) |
| NATIONAL RECONNAISSANCE OFFICE | ) |
| | ) |
| Defendant. | ) |

_____ )

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff moves for Summary Judgment arguing that because the requested document, the

National Reconnaissance Office (NRO) Congressional Budget Justification Book (CBJB), was

disseminated internally within the NRO and externally to Congress the document cannot be an

operational file under 50 U.S.C. §432a. Plaintiff's interpretation of the statute contradicts the plain

language of the statute and nothing in the case law cited by Plaintiff supports such a strained

interpretation.

Plaintiff's motion should be denied. 50 U.S.C. §432a exempts properly designated

operational files from the search and review provisions of the Freedom of Information Act (FOIA) 5

U.S.C. § 552. The NRO CBJB clearly meets the definition of an operational file, and was properly

designated an operational file. The mere act of dissemination does not exempt the CBJB from being

classified as an operational file.

**Background**

On 22 March 2005, Plaintiff submitted a FOIA request to the National Reconnaissance Office ("NRO") seeking a copy of all unclassified portions of the NRO Congressional Budget Justification Book (CBJB) for Fiscal Year 2006.  On 29 March 2005, the NRO denied the request on the grounds that should any responsive records exist, they would be contained in operational files which according to the Intelligence Authorization Act for 2003 (IAA), are exempt from the search and review provisions of the FOIA.  On 7 April 2005, Plaintiff submitted an appeal of the denial. On 18 May 2005, the NRO denied again citing the operational file exemption. On 30 June 2005, the Plaintiff filed a Complaint for Declaratory and Injunctive Relief under the FOIA.  On December 5, 2005 both parties moved for summary judgment.

II.  **Dissemination of the CBJB Does Not Effect its Classification as an Operational File**

Pursuant to the authority granted by the 2003 Intelligence Authorization Act, codified at 50 U.S.C. §432a, the Director of Central Intelligence[1] approved a list of operational files proposed by the Director of the NRO.  (See Defendant's Exhibit 1 paragraph 12 and Tab E hereinafter, DEX 1 ¶; also filed as docket entry 11 attachment 3 ).  The proposed list includes a section entitled Budget and Finance Records Files.  DEX 1 ¶ 12 and TAB E.  The proposed list defined Budget and Finance records as those "pertaining to budget formulation, execution and review .... Included are consolidated budget estimates and justifications."  DEX 1 ¶ 13 and TAB E (emphasis added).  The proposed list, including the provisions governing Budget and Finance Records, was approved by then Director of Central Intelligence George Tenet on April 8, 2003.  DEX 1 ¶ 12 and TAB E.

_____

[1] 50 U.S.C. §432a was changed in 2004to require approval of the the Director of National Intelligence (DNI).  The DNI was created by the Intelligence Reform and Terrorism Prevention Act of 2004, 108 P.L. 458.

Plaintiff does not challenge the designation of the CBJB as an operational file, instead arguing that because the document is disseminated within the NRO and to Congress, it loses that designation. However,  50 U.S.C. §432a does not exempt all disseminated files from the definition of operational files, but rather only those files which are the sole repository of disseminated intelligence.  The statute states "Files which are the sole repository of disseminated intelligence are not operational files." 50 U.S.C. 432a(a)(2)(B).  By the plain language of the statute, the issue is not whether the record itself has been disseminated, but rather whether the record contains disseminated intelligence.  The CBJB contains detailed information on the means and methods used to collect intelligence, but it does not contain intelligence.  DEX 1 ¶ 15.

Additionally the plain language of the statute requires that a record be the "sole repository" of the disseminated intelligence to be precluded from the operational file designation.  The CBJB is not the sole repository of any information.  The CBJB is an amalgamation of information contained in other documents and budget submissions.  DEX 1 ¶ 15.

50 U.S.C. §432a(a)(6)(B) governs judicial review of the NRO's use of the operational file exemption.  Subparagraph B(iii) requires a plaintiff alleging that requested records are improperly withheld by placement solely in exempted operational files to support such allegations with a sworn submission based on personal knowledge or otherwise admissible evidence.  50 U.S.C. §432a(a)(6)(B)(iii).  Plaintiff's declaration in this case, while sworn, does not allege any personal knowledge of the distribution of this highly classified report.  However, the government freely admits that the document is distributed to Congress in the budget process.  See DEX 1.  Even accepting each of Plaintiff's allegations as true, Plaintiff has not, and cannot, offer any information to rebut either that the CBJB does not contain intelligence or that the CBJB is not the sole repository of the information

contained within it.

### III.  ACLU v. DOD Offers No Support for Plaintiff's Position

Plaintiff cites to ACLU v. DOD 351 F. Supp. 2d 265 (S.D.N.Y 2005) as support for his

argument that dissemination of a report automatically precludes its classification as an operational

file.   The Court in ACLU did not hold that dissemination of the records at issue precluded their

designation as operational files but rather that the director of the CIA had not previously designated

the files as exempt stating  "I hold that defendant CIA has failed to satisfy the statutory prerequisites

for invoking the operational files exemption" Id. at 268.  The Court went to hold that reports of the

CIA inspector general were exempt from designation as operational files under a provision which

specifically exempted such investigations, not based on dissemination of the records.  Id at 268; 50

U.S.C. §  431(c)(3).

To bolster his argument, Plaintiff quotes the ACLU Court as saying:

> Thus, even "particularly sensitive records," by virtue of having been
> disseminated or identified beyond their originating operational files,
> become subject to FOIA search and review, subject always to later
> proof of specifically available FOIA exemption.

Id. at 274. The quote actually refers to the counterpart to 50 U.S.C. §432(4)(D) and is taken out of

context.   The paragraphs preceding this statement illuminates the limited nature of the disseminated

intelligence exception.  The Court explained:

> if records were transferred from operational (exempted) files to other
> files and then transferred back, the exemption covering the operational
> files could no longer protect those records from being identified for
> release or specific exemption under FOIA.
>
> Records from exempted operational files which have been
> disseminated to and referenced in files that are not exempted under
> subsection (a) of this section and which have been returned to

exempted operational files for sole retention shall be subject to search and review.

50 U.S.C. §  431(d)(3).  The legislative history explains that this paragraph "concerns the CIA practice of using marker references, referred to as 'dummy copies,' in the dissemination of particularly sensitive records from operational files." H.R. Rep. No. 98-726, pt. 1, at 32. In these circumstances, the sensitive record is temporarily removed, shown to an intended recipient, and returned to the operational file for exclusive storage; in addition, a marker reference, typically a piece of paper with a brief description of the subject matter and storage site of the sensitive record, is put in the file of the reader. Id. The legislative history explains that section 431(d)(3) ensures that "when CIA is searching a non-exempted file for records responsive to an FOIA request and locates a marker reference which substitutes for a record in an exempted operational file which may be responsive, the CIA must retrieve the record from the exempted operational file and process it in response to the FOIA request." Id. Thus, even "particularly sensitive records," by virtue of having been disseminated or identified beyond their originating operational files, become subject to FOIA search and review, subject always to later proof of specifically available FOIA exemption.

ACLU v. DOD supra at 273, 274.  The declaration of Pamela S. Tennyson, the Deputy Director for

Administration for the NRO, makes it clear that the CBJB is not a record as described above.  DEX 1.

The legislative history to the CIA Information Act, 50 U.S.C. § §  431-32 makes clear that the

acts counterpart to 50 U.S.C. §432a(2)(B) was similarly limited.  The House Intelligence Committee

explained that Congress was concerned with the very rare case where intelligence products of

extremely sensitive sources were maintained solely by the same entity which collected the

information and disseminated directly to policy makers, without being shared or stored in the files of

any other intelligence component.  H.R. Rep. 98-726(I), 1984 U.S.C.C.A.N 3741 p. 19.  The CBJB

does not contain any intelligence, and is not the exclusive storage site or sole repository of any

information.  DEX 1 ¶15.  Nothing in Plaintiff's declaration or motion alters these essential facts.

## V.  CONCLUSION

Plaintiff's motion for Summary Judgment is based on the faulty premise that dissemination of a record precludes its designation as an operational file.  Because this interpretation contradicts the plain language of the statute, plaintiff's motion should be denied.

Respectfully submitted,

_____
KENNETH L.  WAINSTEIN, D.C. Bar #451058
United States Attorney

_____
R.  CRAIG  LAWRENCE, D.C. Bar #171538
Assistant United States Attorney

_____
KEVIN K. ROBITAILLE
Special Assistant U.S. Attorney
555 Fourth Street, N.W.
Washington, D.C.  20530
(202) 353-9895