**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                                )
STEVEN AFTERGOOD,                            )
                                                                )
      Plaintiff,                                      )
                                                                )
      v.                                                  )     Case No. 1:05CV01307 (RBW)
                                                                )
NATIONAL RECONNAISSANCE           )
OFFICE,                                                    )
                                                                )
      Defendant.                                    )
_____)


## BRIEF OF AMICUS CURIAE NATIONAL SECURITY ARCHIVE IN SUPPORT OF PLAINTIFF STEVEN AFTERGOOD

      This case concerns an exception from the search and review requirements of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for the operational files of the National Reconnaissance Office (NRO). After receiving a request for the NRO Congressional Budget Justification Book for Fiscal Year 2006, the NRO claimed that the record was not subject to the FOIA. That denial stretches the NRO's operational files exception well beyond the scope envisioned by Congress and transforms a protection intended for the agency's most sensitive intelligence-gathering records into an all-purpose shield for all records concerning NRO activities. For reasons discussed below, the Court should order the NRO to search for, review and otherwise process the requested record under the terms of the FOIA.

## INTEREST OF AMICUS CURIAE

The National Security Archive (the "Archive") is an independent non-governmental research institute and library located at The George Washington University.[1]  The Archive collects and publishes declassified documents acquired through the FOIA, 5 U.S.C. § 552.  It has published more than 500,000 pages of declassified documents in various formats, all pursuant to the core purpose of FOIA "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."  *NLRB v. Robbins Tire & Rubber*, 437 U.S. 214, 242 (1978).

This case concerns an exception from the search and review requirements of the FOIA for operational files of an intelligence agency.[2]  The Archive's research and publication activities frequently concern intelligence matters.  As a result, the Archive has monitored the use of operational files exceptions across the intelligence agencies.  The Archive participated in the 1994 and 2004 Decennial Review of the Central Intelligence Agency's operational file exception; its General Counsel testified at a briefing for a subcommittee of the Senate Armed Services Committee on a proposed operational files Freedom of Information Act Exception in 2003; and the Archive has published a number of electronic briefing books concerning the use

---

[1]     The National Security Archive discloses that it is a project of the National Security Archive Fund, Inc.  The National Security Archive Fund, Inc. is a not-for-profit corporation established under the laws of the District of Columbia. The National Security Archive Fund, Inc. has no parent corporation and no stock, thus no publicly held corporation owns 10 percent or more of its stock. The Archive identifies that its general nature and purpose is to promote research and public education on U.S. governmental and national security decisionmaking and to promote and encourage openness in government and government accountability. The Archive has no members, thus no member has issued shares or debt securities to the public.

[2]     The Archive refers to 50 U.S.C. § 432a as an "exception" rather than an "exemption" because files that are designated as operational files under that provision are not subject to search and review under the FOIA. This case does not concern one of the nine specifically enumerated FOIA exemptions. *See*  5 U.S.C. § 552(b)(1)-(9).

and history of operational files exceptions. Thus, among non-governmental institutions, the Archive has significant knowledge about operational files exceptions.

The Archive submits this *amicus* brief in support of Plaintiff Steven Aftergood because it believes that the NRO has improperly invoked its operational files exception to deny Mr. Aftergood's FOIA request.

## STATEMENT OF THE CASE

On March 22, 2005, Plaintiff Steven Aftergood filed a Freedom of Information Act (FOIA) request with Defendant National Reconnaissance Office (NRO) seeking unclassified portions of the NRO Congressional Budget Justification Book for Fiscal Year 2006. (Tennyson Decl. ¶ 5, TAB A; Compl. ¶ 13.) The NRO Congressional Budget Justification Book (CBJB) is prepared each year in support of the NRO's annual budget request and is intended for delivery to Congress. (Compl. ¶¶ 2, 3; Answer ¶¶ 2, 3.) On March 29, 2005, the NRO denied Mr. Aftergood's request, citing section 502 of the Intelligence Authorization Act for Fiscal Year 2003, codified at 50 U.S.C. § 432a, which created an exception from FOIA's requirements for certain NRO files designated as "operational files." (Tennyson Decl. ¶ 6, TAB B; Complaint ¶ 14.) Mr. Aftergood appealed that decision (Tennyson Decl. ¶7, TAB C), and on May 18, 2005, the NRO denied the appeal, again citing the new exception for NRO operational files (Tennyson Decl. ¶ 8, TAB D; Compl. ¶¶ 15, 16). In its letter denying the appeal, the NRO stated that the information Mr. Aftergood sought "would be contained in operational files" and therefore not subject to search and review under the new legislation. (Tennyson Decl. ¶ 8, TAB D.)

Mr. Aftergood thereafter filed this lawsuit alleging that the requested records were improperly withheld and that the NRO files containing his request did not qualify as operational

files.  (Compl. ¶ 5.)  The NRO answered Mr. Aftergood's complaint, admitting that it had

withheld the requested documents but denying that it had done so improperly. (Answer ¶¶ 1, 8.)

## ARGUMENT

The NRO's denial of Mr. Aftergood's FOIA request based on the agency's operational

files exception, 50 U.S.C. § 432a, is not justified for two independent reasons.  First, the NRO

has improperly designated its budgetary files containing the records sought by Mr. Aftergood as

"operational files."  Second, even assuming the NRO has properly designated these files, the

particular records sought by Mr. Aftergood are subject to search and review because—as the

NRO readily admits—these records have been disseminated outside of the agency's operational

files.

In 2002, Congress provided an exception from FOIA's requirements for the NRO's

properly designated operational files in section 502 of the Intelligence Authorization Act for

Fiscal Year 2003, codified at 50 U.S.C. § 432a. The NRO operational files exception was

modeled after the Central Intelligence Agency Information Act of 1984 ("CIA Information

Act"), codified at 50 U.S.C. § 431. The language of the NRO operational files exception directly

tracks that of the CIA Information Act in all significant provisions.  Specifically, the NRO

legislation allows the Director of the NRO to designate certain files as "operational files" and

thereby exempt them from the search, review, and disclosure provisions of the FOIA.  Unlike a

typical FOIA exemption, the operational files exception removes files that have been designated

as "operational" from FOIA's search and review requirements, with very limited exceptions.

Typically, a FOIA request will require an agency to search and review relevant files and

documents for the requested information and then, only after this search and review has taken

place, decide whether certain documents or portions of documents are exempt from disclosure

based on one of nine specific exemptions.  *See* 5 U.S.C. § 552 (a) (2) & (b).  In contrast, the operational files exception provides that, in response to a FOIA request, the agency need not even perform a search or review of files that have been properly designated as operational files. *See* 50 U.S.C. § 432a (a) (1).

The statute provides for *de novo* judicial review of NRO decisions to deny FOIA requests based on the operational files exception.  § 432a (a) (6).[3]  The statute specifically allows a claimant to challenge the agency's designation of operational files, with the agency bearing the burden of "demonstrating to the court by sworn written submission that exempted operational files likely to contain responsive records" meet the statutory definition of "operational files."  § 432a (a) (6) (B) (iv).

Here, Mr. Aftergood challenges the denial of his FOIA request based upon the NRO's designation of its operational files and based upon the fact that the records he has requested have been widely disseminated.  It is not disputed that the records sought in Mr. Aftergood's FOIA request are contained in budgetary files that the NRO has designated as "operational."  What is disputed is whether the designation of those files meets the statutory definition of "operational files" (and the statute makes clear that the burden rests squarely on the NRO to demonstrate that

---

[3]     The House Report for the CIA Information Act, which contains the exact same judicial review procedures as the NRO legislation, confirms that the basic framework for judicial review is the *de novo* review of the FOIA:

> Subsection 701 (f) [the judicial review provision] ensures effective judicial review by providing that the allegations that CIA has improperly withheld records because of failure to comply with section 701 shall be reviewed in accordance with the subparagraph 552 (a) (4) (B) of title 5, which is the judicial review provisions of the FOIA providing for *de novo* review, subject to seven procedural exceptions set forth in subsection 701 (f). Thus, by virtue of subsection 701 (f), CIA action to implement section 701 will be subject to judicial review in the same manner as CIA action to judicial review currently, except to the extent that paragraphs 701 (f) (1) through (7) provide specific procedural rules.

H.R. Rep. No. 98-726, at 33 (1984).

its designation is proper), and whether the agency, consistent with the statute, may decline to search for and review records that have been widely disseminated outside the agency's designated operational files. Amicus respectfully submits that the answer to these inquiries compels the conclusion that the NRO has improperly withheld the information sought in Mr. Aftergood's FOIA request.

A.    **The NRO Has Improperly Designated as "Operational" the Files Containing the Records Sought by Mr. Aftergood**

Both the plain language of the NRO's operational files exception and an examination of the CIA Information Act, which served as the model for the NRO exception, independently demonstrate that the agency has improperly designated the files containing Mr. Aftergood's request as "operational."

The statute's plain language provides that the definition of "operational files" extends only to files "that document the *means* by which foreign intelligence or counterintelligence is collected *through scientific and technical systems.*" 50 U.S.C. § 432a (a) (2) (A) (emphasis added). In other words, only those files that detail the actual technical and scientific methods through which NRO collects intelligence and counterintelligence qualify as operational. While there are undoubtedly many documents in the NRO's files which would be exempt from *disclosure* under Exemption 1 because they are properly classified—only the narrow category of files that explain the specific means through which technical and scientific systems collect intelligence and counterintelligence qualify for the exemption from FOIA's *search and review* requirements.

The information sought in Mr. Aftergood's FOIA request—unclassified portions of NRO's Congressional Budget Justification Book (CBJB) for Fiscal Year 2006—is not properly part of the operational files defined by the statute because such information does not, in any real

sense, document the technical and scientific means through which the agency collects intelligence. The agency argues that the CBJB "contains detailed information on the means and methods used by the NRO to collect intelligence and is a virtual road map to the NRO's highly sensitive programs." (Mem. Supp. Def.'s Mot. Summ. J. at 6.) However, the agency's argument can only be true if the definition of operational files is stretched beyond recognition. The purpose of the CBJB is not to document the technical and scientific means through which the agency collects its intelligence; it is to inform lawmakers generally about the agency's operations in order to justify its budget request. Only an overly-broad interpretation of what Congress understood to be a narrow exception to FOIA's requirements, *see infra* pp. 8-10, can justify the NRO's designations.

Indeed, the wide reach of the agency's designations suggest that the NRO has interpreted the term "operational files" so broadly as to mean simply any files that document or concern in any way how the NRO operates, but this cannot be what Congress intended when it granted the NRO the exception. In its motion papers, the NRO refers to the list of files that the NRO director, with the approval of the Director of Central Intelligence, has designated as operational files. (Tennyson Decl. ¶ 12, TAB E.) The following are the categories of NRO files that have been designated as "operational":

- Overall Program Management, Policy, and Analysis Files

- Planning and Analysis Subject Files

- Legal and Audiovisual Records Files

- Budget and Finance Record Files

- Contracting, Procurement, and Logistics Records Files

- Security and Counterintelligence Records Files

- Communication Files

- Technology Studies, Research and Development Program(s) Files

- Reconnaissance System Acquisition, Development, Launch and Operation Files

- Operational Support and User Applications Files

(Tennyson Decl. ¶ 12, TAB E.)  This list suggests that there are likely few NRO files that would *not* qualify as "operational."  Many of these files, such as overall program management and policy files, legal records files, contracting and procurement records files, and budget and finance records files, plainly do not "document the means by which intelligence and counterintelligence are collected through technical and scientific systems."

The NRO operational files exception passed both houses of Congress without any public hearings or debate on the provision, and therefore there is a dearth of direct legislative history concerning the application of the exception to the NRO.  That said, there is an extremely well developed legislative history of the CIA Information Act, which served as a model for the NRO exception and which defines operational files in the same way. *See* 50 U.S.C. § 431 (b) (2) (defining "operation files," *inter alia*, as "files of the Directorate for Science and Technology which document the means by which foreign intelligence or counterintelligence is collected through scientific and technical systems").  Accordingly, an examination of the CIA Information Act's legislative history and application sheds considerable light on the proper interpretation of "operational files" in the NRO statute.  *See United States v. District of Columbia*, 897 F.2d 1152, 1156 (D.C. Cir. 1990) (commending the use of related statutes' legislative history for purposes of statutory interpretation); *United States v. Abreu*, 962 F.2d 1447, 1451 (10th Cir. 1992) (same).  As the applicable legislative history and judicial decisions confirm, the NRO has improperly designated its operational files.

8

The CIA Information Act was the product of extensive legislative deliberation. For many years, the CIA had pushed for a total exemption from FOIA requirements for the agency, arguing that the demands of the FOIA were simply inconsistent with the operation of an intelligence agency. *See Intelligence Reform Act of 1981: Hearing before the Senate Select Comm. on Intelligence*, 97th Cong., 1st Sess. 12, 16-17 (1981) (statement of Bobby Inman, Deputy Dir. of CIA). However, realizing that removing the agency completely from FOIA's demands was not politically viable the agency supported a more limited exemption for its operational files. *See S. 1324, An Amendment to the National Security Act of 1947: Hearing before S. Select Comm. on Intelligence*, 98th Cong. 20, 24 (1983) (statement of John N. McMahon, Deputy Dir. of CIA). The rationale for the operational files exception was that no information was being released from these particular files at the CIA anyway because they inevitably qualified under a FOIA exemption, so the resources being devoted to searching and reviewing those particular files could be better spent on reviewing files from which information would be released. *See* S. Rep. No. 98-305, at 10 (1983).

The CIA Information Act was passed after extensive public hearing and debate, based on explicit representations by the agency that it would not result in additional information being withheld from the public. *See Legislation to Modify the Application of the Freedom of Information Act to the Central Intelligence Agency: Hearing before H. Subcomm. on Leg. of Permanent Select Comm. on Intelligence*, 98th Cong. 5 (1984) (statement of John N. McMahon, Deputy Dir. of CIA) ("[I]t is important for everyone to understand that enactment of this legislation would not result in any meaningful loss of information now released under the act."). An extensive public record was made describing the specific files at the CIA exempted by the Act and the kinds of documents found in those files. Indeed, the CIA promised that by

concentrating its FOIA resources on files other than its operational files it could process more FOIA requests and relieve the several-year backlog of FOIA requests that had developed at the agency. *See id.* at 14.

The legislative history of the CIA Information Act makes clear that Congress understood the operational files exception to be a narrow exception to FOIA's requirements, one that encompassed only those files that were the agency's most sensitive. As the House Report states, "only those files concerning intelligence sources and methods are comprehended by the definition of 'operational files.'" H. R. Rep. 98-726, at 20. These files were considered the CIA's most sensitive files because they contained information about the identity of CIA sources and about specific details of how the agency gathered intelligence. *See* S. Rep. 98-305, at 20-22 ("The categories have been framed to concentrate on those CIA files that contain the *most highly sensitive information that directly concerns intelligence sources and methods.*") (emphasis added).

The limited number of judicial opinions applying the CIA Information Act confirms that the exception is narrow in scope: "operational files" include only the agency's "most sensitive files" that "memorialize the conduct and means of the government's foreign intelligence and counterintelligence efforts." *Sullivan v. CIA*, 992 F.2d 1249, 1251 (1st Cir. 1993); *see also ACLU v. Dep't of Defense*, 351 F. Supp. 2d 265, 270-71 (S.D.N.Y 2005) ("Operational files are in turn defined to included certain files of the Directorate of Operations, the Directorate for Science and Technology, and the Office of Personnel Security that contain sensitive information about CIA methods."). Moreover, courts have routinely held that FOIA exemptions must be "narrowly construed." *E.g.*, *FBI v. Abramson*, 456 U.S. 615, 630 (1982).

10

The legislative history is also replete with explanations of what "operational files" are not. Both the House and Senate reports state explicitly that the definition of "operational files" does not include files on "all matters of policy formulated at Agency executive levels, even operational policy." H.R. Rep. 98-726, at 9; S. Rep. 98-305, at 12.[4] The statement of Senator Dave Durenberger at a hearing on the CIA Information Act further clarifies what is not included in the term "operational files":

> [O]ur report on this bill also make[s] clear what sort of files will *not* be considered operational. For example, not only finished intelligence products, but also raw intelligence cables and memoranda that the Directorate of Operations sends to CIA's analysts will not be given operational status. Policy memoranda sent outside the Operations Directorate will not be designated. Neither will the files of the Director and Deputy Director, the Comptroller, the *Finance Office*, the General Counsel, and the other agency-wide management offices that make CIA policy. So the major decisions on CIA operations, *as well as the budgetary story of those operations*, will remain open to FOIA search and review.

*S. 1324, An Amendment to the National Security Act of 1947: Hearing before S. Select Comm. on Intelligence*, 98th Cong. 118 (1983) (statement of Sen. Durenberger) (emphasis added). This is strong evidence that Congress did not intend the NRO's budget and finance records, and

---

[4]     There are numerous other references in the legislative history in which lawmakers and CIA officials make clear that files on policy matters are not included in the definition of "operational files." *See, e.g.*, H.R. Rep. 98-726, at 19 ("[Search and review would continue to apply to] information on policy issues, including operational policy matters . . . ."); S. Rep. 98-305, at 14-15 (same); *Legislation to Modify the Application of the Freedom of Information Act to the Central Intelligence Agency: Hearing before H. Subcomm. on Leg. of Permanent Select Comm. on Intelligence*, 98th Cong. 13 (1984) (statement of John N. McMahon, Deputy Dir. of CIA) ("Let me make clear that this legislation exempts from the FOIA only operational files. . . This will insure that all disseminated intelligence and all matters of policy formulated at Agency executive levels, even operational policy, will remain accessible under FOIA."); *S. 1324, An Amendment to the National Security Act of 1947:Hearing before S. Select Comm. on Intelligence*, 98th Cong. 45 (1983) (statement of Sen. Durenberger) ("I am pleased by the CIA's assurances that all disseminated intelligence and all policy memoranda will remain open to FOIA search and review."); *Id.* at 115 (statement of Sen. Huddleston) ("Our objective is to ensure that the bill applies only to the most sensitive operational files, and not to the files that are used to store the intelligence reports used by analysts and policymakers . . . This ensures continued access to all significant policy materials.").

specifically the CBJB—which tells the "budgetary story" of the agency's operations—to be

designated as operational files.  Furthermore, commenting specifically on the definition of

"operational files" as applied to the Directorate for Science and Technology (DS&T) (which is

the same definition that applies to the NRO), the Senate report states that "[t]o the extent the

DS&T files on administrative, management, and policy matters involved both collection methods

and analysis functions, *such files will also be ineligible for designation."*  S. Rep. 98-305, at 22

(emphasis added).

As this history makes abundantly clear, Congress intended the definition of "operational

files" to be narrowly confined to the files that actually document the sources and methods of

intelligence gathering, not the intelligence product itself, not any type of agency policy, and not

files, such as the CBJB, that tell the "budgetary story" of agency operations.  Moreover, even

when files on "administrative, management, and policy matters" include information on

intelligence methods and functions they are ineligible for designation as operational files.  Based

on this legislative history, it is apparent that the NRO's extremely broad interpretation of

"operational files" used to justify the majority of its designations is plainly inconsistent with

congressional intent.

Lawmakers anticipated the temptation at agencies for such over designation.  When

questioning the CIA deputy director, John McMahon, Congressman Mazzoli asked, "would it be

possible in a sense to expand the number of file cabinets which are marked operational, and

contract the number of file cabinets marked nonoperational, and in a sense finesse the problem

that way?"  *Legislation to Modify the Application of the Freedom of Information Act to the*

*Central Intelligence Agency: Hearing before H. Subcomm. on Leg. of Permanent Select Comm.*

*on Intelligence*, 98th Cong. 15 (1984).  Deputy Director McMahon responded that such an effort

would be possible, but only if the agency "were prepared to do something that violated the spirit and legality of the law." *Id.* The NRO's designation of many of its files, including its all of its budget and finance records, as "operational" clearly violates both the spirit and letter of the operational files exception granted to the agency. Such over designation has resulted in the NRO refusing to search for the information sought by Mr. Aftergood in his FOIA request. This information concerning agency policy and budgeting is exactly the type of information that the legislative history emphatically states should not be considered as part of "operational files." Accordingly, the NRO's denial of Mr. Aftergood's FOIA request is not justified under the statute.

**B.    The NRO Improperly Denied Mr. Aftergood's FOIA Request Because Disseminated Records are Subject to Search and Review**

Although it is apparent that NRO's denial of Mr. Aftergood's request is based on an improper designation of its operational files, even if the NRO's designations are proper, the agency's denial is nevertheless unjustified because the requested records have admittedly been disseminated outside designated operational files. Both the language of the statute and the legislative history of the CIA Information Act confirm that records that are disseminated outside of operational files continue to be subject to search and review under the FOIA.

The NRO statute contains the following three provisions concerning disseminated records and the scope of the operational files exception. First, the statute limits what files may be designated "operational" by explicitly stating that "[f]iles which are the sole repository of disseminated intelligence are not operational files." 50 U.S.C. § 432a (a)(2)(B). Second, the statute provides that files that have not been designated "operational" "which contain information derived or disseminated from exempted operational files shall be subject to search and review." § 432a (a)(4)(A). Third, the statute states that "[r]ecords from exempted

13

operational files which have been disseminated to and referenced in files that are not exempted

under paragraph (1) [i.e., have not been designated "operational"] and which have been returned

to exempted operational files for sole retention shall be subject to search and review."  § 432a

(a)(4)(D).

These provisions work together to ensure that records that have been disseminated

outside of properly designated operational files remain subject to FOIA's search and review

requirements. The first provision ensures that files that are the sole locus of disseminated

intelligence cannot be designated as "operational."  The next provision ensures that the fact that

information "derived or disseminated" from operational files exists in non-designated files does

not exempt those files from search and review.  The third provision importantly focuses not on

"files" but on "records"; it provides that records which are part of properly designated

operational files but that have been disseminated to and referenced in other files and then

returned to operational files are *nevertheless* subject to the search and review requirements of the

FOIA.  It follows that if records have been disseminated outside of properly designated

operational files, but thereafter continue to be held in operational files, those records are subject

to search and review. Accordingly, at a minimum any *record* which has been disseminated

outside of the operational files will be subject to FOIA's search and review requirements—either

because the record is now maintained in a non-operational file or because if it was returned to an

operational file it is still subject to search and review.

The NRO, in its summary judgment motion papers, focuses only on the first of these

three statutory provisions.  The agency argues that because the CBJB is not a sole repository of

disseminated intelligence, under 50 U.S.C. § 432a (a)(2)(B), its designation of the files that

contain the CBJB as "operational" is not improper. (Mem. Supp. Def.'s Mot. Summ. J. at 6-7.)

This, however, is wholly beside the point. The point is that under 50 U.S.C. § 432a (a)(4)(D), *records*—such as the CBJB—that have been disseminated outside of the agency's operational files are subject to search and review, even if they are presently located in the agency's properly designated operational files.

The underlying rationale for applying the search and review requirement to all records that have been disseminated outside of the agency's operational files is that the operational files exception was designed to apply only to the agency's most sensitive files containing records that would be properly withheld in any event. *See supra* pp. 8-10. Records that have been disseminated outside of the operational files—and especially those like the CBJB which have been widely disseminated, even outside the agency—are not the agency's most sensitive because they have been more broadly circulated.

Indeed, the legislative history of the CIA Information Act evidences a clear intent for disseminated records to be subject to search and review.[5] *See* H.R. Rep. 98-726, at 8 ("All intelligence disseminations, including raw intelligence reports direct from the field" "would remain subject to search and review."); S. Rep. 98-305, at 12 (same). Mark H. Lynch, counsel to the American Civil Liberties Union, whose input greatly shaped the legislation,[6] stated the following at a congressional hearing on the CIA Information Act:

---

[5]    The specific provisions dealing with disseminated intelligence and disseminated records in the CIA Information Act (which are exactly the same as the provisions in the NRO's operational files exception) derived from particular record-keeping practices at the CIA. *See* Karen A. Winchester & James W. Zirkle, *Freedom of Information and the CIA Information Act*, 21 Univ. Richmond L. Rev. 231, 264 & 274-75 (1987). Even if NRO record-keeping practices differ from those at the CIA, the legislative history of the CIA Information Act makes clear that legislators intended disseminated records to be subject to FOIA search and review.

[6]    *See Legislation to Modify the Application of the Freedom of Information Act to the Central Intelligence Agency: Hearing before H. Subcomm. on Leg. of Permanent Select Comm. on Intelligence*, 98th Cong. 38-61 (1984); *S. 1324, An Amendment to the National Security Act of*

The Senate Intelligence Committee report provides that documents which may have been disseminated outside of operational files but then returned for storage in operational files will be subject to search and review. *The underlying principle is that anything that is disseminated out of the operational files is subject to search and review.*

*Legislation to Modify the Application of the Freedom of Information Act to the Central Intelligence Agency: Hearing before H. Subcomm. on Leg. of Permanent Select Comm. on Intelligence*, 98th Cong. 49-50 (1984) (statement of Mark H. Lynch, Counsel, American Civil Liberties Union) (emphasis added).

This understanding was confirmed in *ACLU v. Dep't of Defense*, 351 F. Supp. 2d 265, 274 (S.D.N.Y. 2005). There, in a case in which the ACLU sought to obtain information about detainees in United States custody, the court examined the legislative history of the provisions that limited the "sweeping nature of the exemption of operational files from FOIA searches." *Id.* Commenting specifically on the provisions regarding disseminated records, the court noted that "even 'particularly sensitive records,' by virtue of having been disseminated or identified beyond their originating operational files, become subject to FOIA search and review, subject always to later proof of specifically available FOIA exemption." *Id.*

In its Answer, the NRO admits that the CBJB is intended for delivery to Congress (Answer ¶¶ 2, 3 ), and in its papers filed with this motion, the NRO does not dispute that the CBJB for Fiscal Year 2006 has been disseminated outside of the agency's operational files (*see* Def.'s Statement of Material Facts Not in Genuine Dispute ¶ 10). Mr. Aftergood has also presented evidence that the CBJB has been disseminated to various individuals within the executive branch and that members of Congress have, in fact, received the CBJB for Fiscal Year

---

*1947:Hearing before S. Select Comm. on Intelligence*, 98th Cong. 67-78 (1983). Indeed, in more than one instance, legislators adopted the ACLU's recommendation to add certain provisions to the legislation, including adding the specific provision that disseminated records would remain subject to search and review. *See* Winchester & Zirkle, *supra* at 269, 274-75.

2006.  (Aftergood Decl. ¶¶ 5-7.)  There is no doubt that the records sought by Mr. Aftergood have been disseminated outside of the NRO's operational files.  Accordingly, pursuant to 50 U.S.C. § 432a (a)(4)(D), the records sought by Mr. Aftergood are subject to search and review under FOIA—even if the CBJB for Fiscal Year 2006 is currently contained in properly designated operational files.

## CONCLUSION

For the foregoing reasons, the National Security Archive respectfully requests that the Court deny Defendant's motion for summary judgment, grant Plaintiff's motion for summary judgment, and order Defendant to conduct a search and review of the requested records.


Dated: January 9, 2006                              Respectfully submitted,


                                                    _____--S--_____

Jeffrey T. Green                                    Meredith Fuchs
Matthew B. Archer-Beck                              General Counsel
SIDLEY AUSTIN LLP                                   National Security Archive
1501 K Street, NW                                   George Washington University
Washington, DC 20005                                Gelman Library Suite 701
Tel. 202-736-8600                                   2103 H Street, NW
Fax. 202-736-8711                                   Washington, DC 20037
*Of Counsel*                                        D.C. Bar No. 450325
                                                    Tel. 202-994-7000
                                                    Fax. 202-994-7005

17