UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
STEVEN AFTERGOOD                        )
                                        )
        Plaintiff,                      )  Case No. 1:05CV01307 (RBW)
                                        )
    v.                                  )  (ECF)
                                        )
NATIONAL RECONNAISSANCE OFFICE          )
                                        )
        Defendant.                      )
_____ )

## DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION AND BRIEF OF AMICUS CURIAE

Defendant files this reply to plaintiff's Opposition to Defendant's Motion for Summary Judgment and Amicus Curiae's brief in support of plaintiff.

**A.    The Government Has Met its Burden to Demonstrate the Appropriateness of the Operational Files Designation**

Defendant has met its burden under 50 U.S.C. § 432a(a)(6)(B)(iv)(I) of demonstrating by sworn written submission that the exempted operational files likely to contain responsive records perform the functions set forth in paragraph 50 U.S.C. § 432a(a)(2).  That is the budget justification files sought by plaintiff "document the means by which foreign intelligence or counterintelligence is collected through scientific and technical systems."  The declaration of Pamela S. Tennyson establishes that the requested Congressional Budget Justification Book contains detailed information on the means and methods used by NRO to collect intelligence.  See Docket entry 13, attachment 1 paragraph 15 (hereinafter Tennyson decl para #).  Plaintiff and Amicus each proffer two arguments as to why they believe that designation is improper.  These arguments are without merit.

1

Plaintiff and Amicus essentially argue that Congress could not have meant what they said in enacting the NRO operational files exemption. Both Plaintiff and Amicus attempt to use the legislative history of the CIA Information Act to argue that the Congress intended a very narrow, almost non-existent, application of the operational files exemption. Both ignore the plain language of the statute as well as, significant differences in the way operational files are defined in the CIA Information Act compared to the NRO Operational Files statute. Amicus and plaintiff also ignore the critical differences in the function of the two agencies in determining how an operational files exemption applies to each.

**B.     The CBJB Meets the Statutory Definition of Operational File**

Amicus argues that the NRO's designation of budget files as operational files is improper because only files which detail the actual technical and scientific means through which the NRO collects intelligence and counter intelligence qualify as operational. Amicus brief at 6. The Congressional Budget Justification Book (CBJB) does precisely that. As the Tennyson declaration makes clear, the CBJB provides "detailed information on the means and methods used by NRO to collect intelligence." Tennyson decl para15. Amicus offers nothing but a naked assertion that in Amicus' opinion, the CBJB does not in "any real sense, document the means through which the agency collects intelligence." Amicus brief at 6-7.

Amicus bases this assertion on its belief that the purpose of the CBJB is to inform lawmakers "generally" about the agency's operations. Amicus does not explain what is meant by "generally," or offer any evidence to support its contention the CBJB is limited to such a general overview. The NRO's mission is to research, develop, acquire and operate highly sensitive spy satellites. Tennyson decl para 2. The agency's sole function is to gather intelligence through technical and scientific

2

means.  Tennyson decl para 2. That an agency whose mission is to operate sensitive spy satellites would document the means and methods it uses to acquire intelligence when seeking to justify its budget requests to Congress is hardly surprising.  The agency has submitted a declaration which is clear, specific, and reasonably detailed and neither Amicus nor Plaintiff has offered any contradictory evidence on the record or evidence of agency bad faith and thus summary judgment for the agency is appropriate.  See Western Ctr. for Journalism v. IRS, 116 F. Supp. 2d 1, 7 (D.D.C. 2000) (citing Hayden v. NSA, 608 F.2d 1381, 1387 (D.C. Cir. 1979)).

Perhaps recognizing the weakness of the argument regarding the designation of budget materials as operational files, Amicus attempts to change the focus to the other files designated as operational by the NRO director.   The issue before the Court is whether the document requested by plaintiff has been designated as an operational file and whether that designation is proper under the statute.  Whether the categories of documents proposed by the NRO director and approved by the Director of Central Intelligence would result in few files of the NRO not qualifying as operational files, as Amicus argues, is irrelevant.  Similarly, plaintiff's argument that the CBJB "should not be maintained in operational files because it contains significant releasable material" (Pl Opp page 2) is likewise irrelevant.  The document requested in this case, the CBJB, fits the statutory definition of an operational file and has been properly designated as such.

Both plaintiff and Amicus rely on the legislative history of the CIA Information Act to argue that 50 U.S.C. § 432a contains limitations not expressed in the text of the statute.  However,  when the statute's language is plain, the sole function of the courts - at least where the disposition required by the text is not absurd - is to enforce it according to its terms." Goldring ex rel. Anderson v. District of Columbia, 416 F.3d 70, 74-75 (D.C. Cir. 2005) citing Lamie v. United States Trustee, 540 U.S.

526, 534, 157 (2004) (internal quotation marks omitted).  While defendant agrees that the legislative

history of the CIA Information Act may aid the court's understanding of like worded provisions in the

NRO statute, both plaintiff and Amicus attempt to elevate this legislative history above the text of the

statute.

Amicus argues that the legislative history of the CIA Information Act shows that Congress

intended the operational files exemption to apply only to the CIA's most sensitive records and that the

definition excludes documents which describe what Amicus refers to as the "budget story" of the

agency.  Amicus Brief at 9.  There are three problems with this line of reasoning.  First, the Tennyson

declaration makes clear that the CBJB is one of the NRO's most sensitive documents, described as a

virtual road map to the NRO's most sensitive programs.  Tennyson decl para 15.

Second, the provisions regarding what may be designated an operational file are different in

the two statutes.  The CIA Information Act specifies three directorates and allows designation of

different types of files for each directorate.    The Statute provides:

> (b) "Operational files" defined.  In this section, the term "operational files" means--
>   (1) files of the Directorate of Operations which document the conduct of foreign
> intelligence or counterintelligence operations or intelligence or security liaison
> arrangements or information exchanges with foreign governments or their intelligence
> or security services;
>   (2) files of the Directorate for Science and Technology which document the means
> by which foreign intelligence or counterintelligence is collected through scientific and
> technical systems; and
>   (3) files of the Office of Personnel Security which document investigations
> conducted to determine the suitability of potential foreign intelligence or
> counterintelligence sources;

50 U.S.C. §431(b).  The CIA is not authorized to designate a file as operational unless it both fits the

4

definition and is located in the designated directorate.  In contrast, the statute[1] at issue here allows the NRO to designate any file within the entire agency that documents the means by which foreign and counterintelligence is collected through scientific and technical means.  50 U.S.C. §432a(a)(2)(A). CIA budget files are unlikely to be maintained in any of the designated directorates.  Thus the assertion that budget documents are not exempted by the CIA Information Act may be true, even if, they document the means of intelligence collection because unless they are stored in the Directorate for Science and Technology they would not meet the statutory definition of operation files.  However, the NRO budget files are eligible for designation, regardless of where stored, provided they document the means by which intelligence is collected.

Finally, Amicus' argument ignores the significant differences between the two agencies.  As Amicus points out the operational files exemption applies only to the means of collecting intelligence not to the finished intelligence product.  Amicus brief at 11.  The NRO does not produce finished intelligence.  Tennyson decl para 2.  As its sole function is to collect intelligence through scientific and technical means, a far greater percentage of NRO's budget documents would fall within the meaning of operational files than would the CIA's, even if the two statutes were drafted the same way.

Similarly plaintiff and Amicus both argue that the legislative history to the CIA Information Act indicates an intention by Congress to not limit the amount of information available under the

---

[1] 432a defines operational files in paragraph (a) as follows:
(a)1 The Director of the NRO...may exempt operational files...
(2) Subject to Paragraph (B), for the purposes of this section, the term "operational files" means files of the National Reconnaissance Office that document the means by which foreign intelligence or counterintelligence is collected through scientific and technical means

Freedom Of Information Act.  Of course, 50 U.S.C. §432a does not expressly contain any such

limitation.   As argued above, both the definition of operational files in the respective statutes and the

nature of the agencies involved are significantly different.  The legislative history of the CIA

Information Act suggests Congress' purpose in providing the CIA with such a limited exception to

the FOIA was to focus the agencies resources on requests more likely to produce releasable materials.

Amicus brief at 9.  It is pure speculation on the part of plaintiff and Amicus that Congress had the

same purpose in mind in enacting a similar, but broader, exemption to the NRO in the wake of the

September 11, 2001 terrorist attacks and the onset of the Global War on Terrorism.

Additionally, it is not clear that a review of the CBJB would result in the release of significant

materials.  Plaintiff bases his assertion that review of the document would result in a significant

release on the release of information from the 1998 CBJB.[2]   While the 1998 CBJB was reviewed and

portions released after the enactment of 50 U.S.C. § 432(a), on appeal of the initial denial, the NRO

determined that the request had been received before the enactment of the statute and thus the statute

arguably did not apply to that request.  Because of the increased sensitivity of intelligence gathering in

the war on terrorism the 2006 CBJB may contain significantly less releasable material.  Without a

review of the requested record, there is no way to know whether it would contain a similar amount of

releasable material or not.  Absent admissible evidence challenging the NRO's designation, 50 U.S.C.

432a(6)(B)(iv)(II) precludes the court from ordering the NRO to review the requested records to

determine the appropriateness of the designation.   However, even assuming that the CBJB contains

releasable material, the statute does not preclude its designation as an operational file.

---

[2] 50 U.S.C. §431a specifically exempts designated operational files from search and
review and expressly provides for search and review in the event a court determines the
exemption was improperly applied.

**C.      Dissemination of the CBJB to Congress in the Budget Approval Process Does not Preclude its Designation as an Operational File**

Plaintiff and Amicus reiterate the claim made by plaintiff that dissemination of the CBJB makes the record subject to search and review.  The claim is without merit.  As Amicus correctly summarizes, the statute has three provisions dealing with dissemination.  See Amicus Brief at 13.  However, contrary to plaintiff's and Amicus assertions, the dissemination of the CBJB to Congress does not fall under any of these provisions.

The first provision dealing with disseminated files precludes files which are the sole repository of disseminated intelligence from being designated as operational.  As the government demonstrated in our opposition to plaintiff's cross motion for summary judgment, the CBJB neither contains disseminated intelligence nor is the sole repository of any information.  Tennyson Decl para 15.  The second provision provides that files not designated as operational files but containing information derived from operation files are subject to search.  This provision does not apply because the CBJB is clearly designated as operational.  The third provision provides that "records from exempted operational files which have been disseminated to and referenced in files that are not exempted under paragraph 1 and which have been returned to exempted operational files for sole retention shall be subject to search and review." The CBJB has not been disseminated to and referenced in any other file.  The entire record has been disseminated to Congress as an exempt operational file.  After trumpeting the legislative history of the CIA Information Act to contradict unambiguous statutory provisions, Amicus and Plaintiff suddenly ignore that same legislative history here.  As the Court in ACLU v. DoD explained:

> The legislative history explains that this paragraph "concerns the CIA practice of using marker references, referred to as 'dummy copies,' in the dissemination of

particularly sensitive records from operational files." H.R. Rep. No. 98-726, pt. 1, at 32. In these circumstances, the sensitive record is temporarily removed, shown to an intended recipient, and returned to the operational file for exclusive storage; in addition, a marker reference, typically a piece of paper with a brief description of the subject matter and storage site of the sensitive record, is put in the file of the reader. Id. The legislative history explains that section 431(d)(3) ensures that "when CIA is searching a non-exempted file for records responsive to an FOIA request and locates a marker reference which substitutes for a record in an exempted operational file which may be responsive, the CIA must retrieve the record from the exempted operational file and process it in response to the FOIA request." Id.

ACLU v. DoD 351 F. Supp. 2d 265, 273-274 (S.D.N.Y 2005). Both the statutory language and the quoted legislative history make clear that this provision refers to files which are referenced in other files but returned to the operational file for storage. It is simply inapplicable to the dissemination of the entire operational file to a decision maker such as Congress.

## V. CONCLUSION

The defendant has shown by a sworn declaration which is clear, specific, and reasonably detailed that the requested records are properly designated as operational. Neither Amicus nor Plaintiff has offered any contradictory evidence on the record or evidence of agency bad faith and thus summary judgment for the agency is appropriate.

Respectfully submitted,

_____
KENNETH L. WAINSTEIN, D.C. Bar #451058
United States Attorney

_____
R. CRAIG LAWRENCE, D.C. Bar #171538
Assistant United States Attorney

8

_____

KEVIN K. ROBITAILLE
Special Assistant U.S. Attorney
555 Fourth Street, N.W.
Washington, D.C.  20530
(202) 353-9895