# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

—————————————————————— )
STEVEN AFTERGOOD,                              )
                                               )
          Plaintiff,                           )
                                               )
                                               )
     v.                                        )     **Civil Action No. 05-1307 (RBW)**
                                               )
                                               )
NATIONAL RECONNAISSANCE OFFICE,                )
                                               )
          Defendant.                           )
—————————————————————— )

## MEMORANDUM OPINION

The plaintiff, Steven Aftergood, brings this action alleging that the defendant, the

National Reconnaissance Office ("NRO"), has impermissibly withheld a document he requested

pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2000). Complaint

("Compl.") ¶ 1. Currently before the Court are the plaintiff's motion for summary judgment

("Pl.'s Mot.") and the defendant's cross-motion for summary judgment ("Def.'s Mot.").[1] For the

following reasons, the Court grants the plaintiff's motion for summary judgment and denies the

defendant's cross-motion.

---

[1] The following papers have been submitted to the Court in connection with these motions: (1)
Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment ("Pl.'s Mem."); (2)
Defendant's Opposition to Plaintiff's Motion for Summary Judgment ("Def.'s Opp."); (3) Plaintiff's Reply to
Defendant's Opposition to Plaintiff's Motion for Summary Judgment ("Pl.'s Reply"); (4) Memorandum of Law in
Support of Defendant's Motion for Summary Judgment ("Def.'s Mem."); (5) Plaintiff's Opposition to Defendant's
Motion for Summary Judgment ("Pl.'s Opp."); and (6) Defendant's Reply to Plaintiff's Opposition and Brief of
Amicus Curiae ("Def.'s Reply"). In addition to the parties' filings, the Court permitted the National Security
Archive as an amicus curiae to file a brief in support of the plaintiff's position. See Brief of Amicus Curiae National
Security Archive in Support of Plaintiff Steven Aftergood ("Am. Br.").

# I. Background

Under the FOIA, federal agencies are required to disclose, upon proper request, a wide range of information pertaining to their operations. See 5 U.S.C. § 552(a)(1)-(5) (2000). Congress has created a number of exemptions from the FOIA's broad purview. See 5 U.S.C. § 552(b)(1)-(9). When an agency receives a request for records but discovers, upon reviewing the requested material, that it concerns matters falling within the scope of these exemptions, the agency is not required to disclose such records. See Assassination Archives & Research Ctr. v. C.I.A., 334 F.3d 55, 57 (D.C. Cir. 2003) (holding that agencies may deny disclosure of materials requested under the FOIA which fall under an exemption in 5 U.S.C. § 552(b)(1)-(9)). Additionally, Congress has empowered the Director of the NRO, "with the coordination of the Director of National Intelligence ["DNI"]," to exempt its "operational files" even from "the provisions of [the FOIA] which require publication, disclosure, search, or review in connection therewith." 50 U.S.C. § 432a (2000).[2] Thus, unlike the other FOIA exemptions—which allow an agency to withhold certain records from disclosure only after examining their contents, 5 U.S.C. § 552(b)(1)-(9)—the operational files exemption created by § 432a eliminates the NRO's obligation even to search through or review the files which it claims to be "operational." 50 U.S.C. § 432a(a)(1).

On February 10, 2003, exercising the authority given to them by 50 U.S.C. § 432a, NRO Director Peter B. Teets and Director of Central Intelligence George J. Tenet[3] issued for internal

---

[2] "Operational files" are defined, subject to certain exceptions, as "files of the [NRO] that document the means by which foreign intelligence or counterintelligence is collected through scientific and technical systems." 50 U.S.C. § 432a(a)(2)(A).

[3] The prior version of 50 U.S.C. § 432a required the approval of the Director of Central Intelligence ("DCI"), the functional precursor in certain respects to the Director of National Intelligence ("DNI"). The Intelligence Reform and Terrorism Prevention Act of 2004, 108 P.L. 458, which created the position of the DNI,

(continued...)

distribution an "Operational File Designation List" ("Designation List") identifying ten broad categories of files exempt from the FOIA's search and review procedure.  See Def.'s Mem., Ex. 6 at 1-5.  One of these categories, entitled "Budget and Finance Records Files"—which the Designation List defines as "records pertaining to budget formulation, execution, and review, and, accounting and expenditure"—specifically includes "consolidated budget estimates and justifications for the entire NRO program."  Id. at 3.

The plaintiff, an employee of the Federation of American Scientists, Pl.'s Mem., Ex. 1 ¶ 1, submitted a FOIA request to the NRO on March 22, 2005, seeking the release of "all unclassified portions of the NRO Congressional Budget Justification Book ("CBJB") for Fiscal Year 2006," Compl. ¶ 13, Def.'s Mem. at 1 & Ex. 2.  The CBJB is a document prepared by the NRO each year compiling budget estimates for all NRO programs, as well as justifications for those estimates, in support of the NRO's annual budget request to Congress.  Compl. ¶¶ 2-3; Answer ¶¶ 2-3; Def.'s Mem. at 6-7; Am. Br. at 3.  On March 29, 2005, the defendant issued a letter denying the plaintiff's request on the sole ground that "responsive records, should any exist, would be contained in operational files . . . exempt from the publication, disclosure, search, and review provisions of the FOIA" pursuant to § 432a.  Def.'s Mem., Ex. 3; Compl. ¶ 14.  The plaintiff administratively appealed the defendant's denial of his FOIA request on April 7, 2005, Def.'s Mem., Ex. 4, which the defendant likewise denied by letter dated May 18, 2005, on the basis that the CBJB was an operational file exempt from search and review, Def.'s Mem.,

---

[3](...continued)
also amended § 432a to require the approval of the DNI to exempt NRO operational files in place of the DCI.  See 108 P.L. 458 § 1071(a)(1)(GG).

Ex. 5.  See Compl. ¶¶ 15-16; Def.'s Mem. at 1.[4]  The plaintiff then filed this action on June 30,

2005, seeking a declaratory judgment that the defendant's withholding of the CBJB is unlawful

and an injunction ordering the defendant to release to the plaintiff "all unclassified portions of

the [CBJB]."  Compl. at 4.  The plaintiff moved for summary judgment on December 5, 2005,

Pl.'s Mot. at 1, and the defendant filed a cross-motion for summary judgment on December 6,

2005, Def.'s Mot. at 1.

In support of its motion for summary judgment and in opposing the plaintiff's cross-

motion for summary judgment, the defendant argues that the CBJB is properly exempt from the

FOIA's search and review requirements.  According to the defendant, the CBJB plainly falls

within the "Budget and Finance Records Files" category set forth in the Designation List

approved by the NRO Director and the DCI in February 2003.  Def.'s Mem. at 6.  Additionally,

the defendant argues that the CBJB "clearly meets the statutory definition of an [o]perational

[f]ile" provided in § 432a(a)(2)(A), in that it "contains detailed information on the means and

methods used by the NRO to collect intelligence and is a virtual road map to [defendant NRO's]

highly sensitive programs."  Def.'s Mem. at 6 & Ex. 1 ¶¶ 14-15.

Neither the plaintiff nor the amicus contest that the CBJB fits within the extensive array

of records designated exempt by the Designation List.  See Am. Br. at 5.[5]  Instead, they contend

that § 432a does not empower the NRO to exempt the CBJB as an operational file.  See Def.'s

---

[4] Pursuant to 5 U.S.C. § 552(a)(6)(A)(ii), agencies responding to FOIA requests are required to make determinations on appeals raised by requesting parties within 20 days after receiving such appeals, except where "unusual circumstances" specified in § 552(a)(6)(B) justify an extension.

[5] Indeed, they contend "there are likely few NRO files that would not qualify as operational." Am. Br. at 8 (emphasis in original).  Consequently, they argue that the Designation List reflects an "overly-broad interpretation of what Congress understood to be a narrow exception to FOIA's requirements," id. at 7, and that many of the files deemed exempt by the Designation List, including the CBJB, fall outside the meaning of "operational file" set forth in § 432a(a)(2)(A), id. at 7-8.

Mem., Ex. 4 at 1 (March 29, 2005, letter from Steven Aftergood to the NRO appealing rejection of his FOIA request); Am. Br. at 7-8.  First, they argue that the CBJB does not meet the threshold definition of an "operational file" because it does not  "document the means by which foreign intelligence or counterintelligence is collected through scientific and technical means," Am. Br. at 6 (quoting § 432a(a)(2)(A)), but rather "tell[s] the 'budget story' of agency operations," id. at 12, and "inform[s] lawmakers generally about the agency's operations in order to justify its budget request," id. at 7.

Second, the plaintiff and amicus argue that even if the CBJB does meet the threshold definition in § 432a(a)(2)(A), it fits into one or both of two exceptions to the operational files exemption.  Pl.'s Mem. at 2-3; Pl.'s Reply at 3-4; Pl.'s Opp. at 4-5; Am. Br. at 13-17.  The first of these exceptions, provided in § 432a(a)(2)(B), excludes from the definition of operational files items which are "the sole repository of disseminated intelligence."  The second exception, set forth in § 432a(a)(4)(D), provides that "[r]ecords from exempted operational files which have been disseminated to and referenced in files that are not exempted . . . and which have been returned to exempted operational files for sole retention shall be subject to search and review." According to the plaintiff and amicus, the CBJB fits within each of these exceptions, as it has been disseminated outside the defendant agency, is the sole repository of the information it contains,[6] and has been returned post-dissemination to operational files for sole retention.  Pl.'s Mem. at 3, Ex. 1 ¶¶ 3-7, Ex. 2 at 1; Pl.'s Reply at 3-4; Pl.'s Opp. at 4-5; Am. Br. at 13-17.

---

[6] Alternatively, the plaintiff argues that even if "the CBJB itself is not the sole repository of disseminated information requested by plaintiff[,] . . . . the exempted operational files in which the CBJB is contained are the sole repository of such information."  Pl.'s Reply at 3 (emphasis in original).

The defendant asserts that neither of these exceptions applies. Specifically, while it concedes that the CBJB has been disseminated, Def.'s Mem. at 7 & Ex. 1 ¶ 15; Def.'s Reply at 7, the defendant argues that the CBJB is not the sole repository of its contents, Def.'s Mem. at 6-7 & Ex. 1 ¶ 15; Def.'s Reply at 7, that it does not contain intelligence, Def.'s Mem. at 6 & Ex. 1 ¶ 15; Def.'s Reply at 7, and that it was not disseminated from operational files but rather as a complete, free-standing operational file, Def.'s Reply at 7. The defendant therefore contends that the CBJB was properly exempted from the FOIA's search and review procedures, notwithstanding the exemptions contained in §§ 432a(a)(2)(B) and 432a(a)(4)(D).

## II. Standard of Review

### A. Federal Rule of Civil Procedure 56(c)

Courts will grant a motion for summary judgment under Federal Rule of Civil Procedure 56(c) if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When ruling on a Rule 56(c) motion, the Court must view the evidence in the light most favorable to the non-moving party. Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006) (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)). The Court must therefore draw "all justifiable inferences" in the non-moving party's favor and accept the non-moving party's evidence as true. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

The non-moving party, however, cannot rely on "mere allegations or denials." Burke v. Gould, 286 F.3d 513, 517 (D.C. Cir. 2002) (quoting Anderson, 477 U.S. at 248) (quotation marks omitted). "[C]onclusory allegations unsupported by factual data will not create a triable issue of fact." Pub. Citizen Health Research Group v. FDA, 185 F.3d 898, 908 (D.C. Cir. 1999)

(internal quotation marks and citations omitted).  Rather, the non-moving party must go beyond

"the pleadings and by [his] own affidavits, or depositions, answers to interrogatories, and

admissions or file, designate specific facts showing that there is a genuine issue for trial."

Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (internal quotation marks and citation

omitted).  Under Rule 56(c), if "the nonmoving party has failed to make a sufficient showing on

a essential element of her case with respect to which she has the burden of proof," summary

judgment is warranted.  Fox v. Giaccia, 424 F. Supp. 2d 1, 5 (D.D.C. 2006) (Walton, J.) (citing

Celotex, 477 U.S. 317 at 323).

## B. Summary Judgment in FOIA Cases

Section 432a expressly provides for de novo judicial review of an agency's decision to

withhold records on the basis of the operational file exemption.  With certain enumerated

exceptions, "whenever any person who has requested agency records under [the FOIA] alleges

that [the] NRO has withheld records improperly because of failure to comply with any provision

of [50 U.S.C. § 432a], judicial review shall be available under the terms set forth in section

552(a)(4)(B) of Title 5," the FOIA's general judicial review provision.  50 U.S.C. §

432a(a)(6)(A).  Section 552(a)(4)(B) provides:

> On complaint, the district court . . . has jurisdiction to enjoin the agency from
> withholding agency records and to order the production of any agency records
> improperly withheld from the complainant . . . . [and] shall determine the matter de
> novo, and may examine the contents of such agency records in camera to determine
> whether such records or any part thereof shall be withheld under any of the
> exemptions set forth in subsection (b) of [5 U.S.C. § 552], and the burden is on the
> agency to sustain its action.

5 U.S.C. § 552(a)(4)(B).  To meet this burden, agencies often submit affidavits and Vaughn

indices setting forth a description of each document being withheld, the exemption that justifies

withholding each document, and the reasons supporting the application of the exemption to each

withheld item.  See Vaughn v. Rosen, 484 F.2d 820, 827 (D.C. Cir. 1973); King v. U.S. Dep't of Justice, 830 F.2d 210, 219 (D.C. Cir. 1987); see also Nat'l Inst. of Mil. Justice v. U.S. Dep't of Defense, 404 F. Supp. 2d 325, 331 (D.D.C. 2005) (Walton, J.).  The FOIA judicial review provision specifically instructs the Court reviewing an agency's decision to withhold requested records to consider several factors:

> In addition to any other matters to which a court accords substantial weight, a court shall accord substantial weight to an affidavit of an agency concerning the agency's determination as to technical feasibility under paragraph [5 U.S.C. § 552(a)](2)(C) and subsection [5 U.S.C. § 552](b) and reproducibility under paragraph [5 U.S.C. § 552(a)](3)(B).

5 U.S.C. § 552(a)(4)(B).

As noted earlier, § 432a adds several NRO-specific exceptions and qualifiers to the general FOIA judicial review framework, which together reflect a clear mandate from Congress that disputes over agencies' use of the operational file exemption should be resolved, wherever feasible, on the basis of the parties' sworn written submissions.  50 U.S.C. § 432a(a)(6)(B)(ii) (stating that the "court shall, to the fullest extent practicable, determine the issues of fact based on sworn written submissions of the parties").  The NRO is directed to "meet its burden under [S]ection 552(a)(4)(B) of Title 5 by demonstrating to the court by sworn written submission that exempted operational files likely to contain responsive records currently perform the functions" of operational files as defined by § 432(a)(2).  50 U.S.C. § 432a(a)(6)(B)(iv)(I).  The Court may order the NRO to review files it has withheld on the basis of the operational file exemption if, and only if, the plaintiff substantiates his allegations that the files are being improperly withheld "with a sworn written submission based upon personal knowledge or otherwise admissible evidence."  50 U.S.C. § 432a(a)(6)(B)(iii), (iv)(II), (vi).  Even where § 432a does provide for in camera review of materials an agency claims are exempt operational files, the statute requires

that "any information filed with, or produced for the court . . . shall be coordinated with the Director of National Intelligence prior to submission to the court."  50 U.S.C. § 432a(a)(6)(B)(viii).  Additionally, § 432a expressly prohibits party-initiated discovery under the Federal Rules of Civil Procedure, except that parties are permitted to make requests for admissions under Rules 26 and 36.  50 U.S.C. § 432a(a)(6)(B)(v).

While § 432a thus directs the Court to resolve disputes over the NRO's designation of materials as operational files exempt from search and review, it is not clear what level of deference, if any, the Court must give either to the NRO's interpretation of the operational files exemption reflected in its sworn written submissions or to specific decisions by the NRO to categorize particular materials as exempted operational files.  The parties have not addressed the issue, and, aside from the language providing for de novo review in the FOIA's general judicial review section, 5 U.S.C. § 552(a)(4)(B), neither the FOIA nor § 432a provide an answer.  Moreover, no federal court has yet confronted the issue; indeed, the Court has found no federal decisions making reference to § 432a in any context.

The Court is not, however, entirely without guidance.  First, as a general matter, the District of Columbia Circuit has provided instruction concerning the deference courts owe to statements put forward by a withholding agency in the broader FOIA context.  On the one hand, the Court may rely on an agency's affidavits

> if the affidavits [1] describe [A] the documents and [B] the justifications for nondisclosure with reasonably specific detail, [2] demonstrate that the information withheld logically falls within the claimed exemption, and [3] are not controverted by either [A] contrary evidence in the record nor by [B] evidence of agency bad faith.

Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981).  On the other hand, the agency's affidavits "cannot support summary judgment" if the statements they contain "are

conclusory, merely reciting statutory standards, or if they are too vague or sweeping." King, 830 F.2d at 219 (internal citation and quotation marks omitted).[7]

Second, at least one federal court has addressed a very similar issue in the context of the CIA Information Act, 50 U.S.C. § 431 (2000), which, like § 432a, provides a mechanism by which operational files can be exempted from the FOIA's search and review requirement.[8]  In ACLU v. Dep't of Defense, 351 F. Supp. 2d 265, 269 (S.D.N.Y. 2005), the Southern District of New York confronted the question of what level of deference should be given to the CIA's interpretation of the scope of the operational files exemption created by § 431.  As "[t]he parties [had] not brief[ed] the question whether the [CIA's] interpretation of the CIA Information Act is entitled to any deference under Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984)," id. at 269, and the CIA had not yet promulgated any interpretation of § 431 or list of exempted files prior to invoking the operational file exemption to deny the plaintiff's FOIA request, the ACLU Court concluded that Chevron deference was not warranted.  351 F. Supp. 2d at 269.  Moreover, while that Court observed that ordinarily the CIA still would be entitled to some degree of deference under Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944), which requires the court to apply a variable degree of deference determined by "the thoroughness

---

[7] The District of Columbia Circuit has not defined what comprises a "conclusory" statement for purposes of evaluating agency affidavits, see Nat'l Inst. of Mil. Justice, 404 F. Supp. 2d at 332, but it has made clear that if the agency's statement provides "no factual support . . . for an essential element of the claimed privilege or shield, the label 'conclusory' is surely apt," Senate of the Commonwealth of Puerto Rico ex rel. Judiciary Comm. v. U.S. Dep't of Justice, 823 F.2d 574, 585 (D.C. Cir. 1987) (emphasis in original).

[8] As both the parties and the amicus agree, § 432a was modeled on § 431, and much of § 432a's language is substantially identical to corresponding provisions of § 431.  See Pl.'s Mem. at 2; Def.'s Opp. at 5; Pl.'s Reply at 2; Def.'s Mem. at 6; Pl.'s Opp. at 2; Am. Br. at 4, 8-13; but see Def.'s Reply at 3-6 (noting differences between § 431 and § 432a).  Accordingly, while there is virtually no available legislative history pertaining to § 432a, the legislative history of § 431 can shed considerable light on similar provisions of § 432a.  See United States v. District of Columbia, 897 F.2d 1152, 1156 (D.C. Cir. 1990) (noting that legislative history of related statutes may be consulted to aid in statutory interpretation).

evident in [the agency's] consideration, the validity of its reasoning, its consistency with earlier

and later pronouncements, and all those factors which give it power to persuade, if lacking

power to control," id.; see ACLU, 351 F. Supp. 2d at 269, it declined to afford "formal Skidmore

deference" to the CIA's position, ACLU, 351 F. Supp. 2d at 269.  The Court reached this

conclusion because it found itself "not able adequately to address [the Skidmore factors] except

for the persuasiveness of [the CIA's] arguments, a factor that [the Court would] take into

consideration in any event." 351 F. Supp. 2d. at 269 (internal quotation marks omitted).

Accordingly, the ACLU Court reviewed "de novo" the CIA's decision to exempt the requested

materials at issue as "operational files" and its interpretation of § 431 on which basis it deemed

those files "operational."  Id.

Taken together, both this Circuit's guidance in Casey, 656 F.2d at 738, King, 830 F.2d at

219, and Puerto Rico, 823 F.2d at 585, and the Southern District of New York's interpretation of

50 U.S.C. § 431 in ACLU, 351 F. Supp. 2d at 269, suggest that courts should exercise a certain

level of caution in reviewing an agency's written statements regarding the content of files for

which the defendant claims § 432a's operational files exemption.[9]  To be sure, subsections (iii),

_____

[9] Additionally, as the amicus indicates, the legislative history of § 431 (pertaining to CIA records) suggests that Congress intended the "operational files" exemption in both § 431 and § 432a to be construed narrowly and that it did not intend the exemption to reflect a significant departure from the existing standards in terms of what information is subject to release under the FOIA.  See, e.g., Central Intelligence Agency Information Act, H. R. Rep. No. 98-726, pt. 1, at 17 (1984) ("The Committee considered it to be of primary importance in providing [the] CIA relief from undue FOIA processing burdens to preserve undiminished the amount of meaningful information releasable to the public under the FOIA."); Legislation to Modify the Application of the Freedom of Information Act to the Central Intelligence Agency:  Hearing before H. Subcomm. on Leg. of Permanent Select Comm. on Intelligence, 98th Cong. 5 (1984) (Statement of John N. McMahon, CIA Deputy Director) ("[I]t is important for everyone to understand that enactment of this legislation would not result in any meaningful loss of information now released under the [FOIA]."); id. at 15 (noting that "expand[ing] the number of file cabinets which are marked operational, and contract the number of file cabinets marked nonoperational" would be possible only if the CIA "were prepared to do something that violated the spirit and legality of the law."); S. 1324, An Amendment to the National Security Act of 1947:  Hearing before S. Select Comm. on Intelligence, 98th Cong. 118 (1983) (Statement of Sen. Dave Durenberger) (noting that files pertaining to CIA policy matters and financial planning—including "files of . . . the Comptroller [and] the Finance Office . . . as well as the budgetary story of [the CIA's] operations"

(continued...)

(iv), and (vi) of 50 U.S.C. § 432a(a)(6)(B) allow the defendant to meet its burden through its written submissions, and it would defeat the purpose of § 432a's operational files exemption to require the defendant to provide a detailed catalogue of the documents it claims to be exempted operational files, as the ostensible aim of § 432a's exemption is to permit the NRO to avoid having to search through and review sets of records which do not contain information which must be released under the FOIA.  Nonetheless, the defendant must provide more than "conclusory" statements, which merely "recite the statutory standards" or are "too vague or sweeping," King, 830 F.2d at 219, to provide the Court any basis upon which to credit the defendant's assertions, or which contain "no factual support . . . for [an] essential element," Puerto Rico, 823 F.2d at 576, of the operational files exemption.

Additionally, the Court sees no reason to accord any formal deference under the Chevron or Skidmore frameworks to the interpretation of § 432a the defendant offers in support of its motion for summary judgment and in opposing the plaintiff's cross-motion.  As in ACLU, 351 F. Supp. 2d at 269, the defendant has not yet publicly promulgated any official interpretation of § 432a's operational files exemption, and thus Chevron deference is not warranted.  Moreover, while the defendant here, unlike the CIA in ACLU, did issue internally the February 2003 Designation List delineating the types of files which the NRO Director and the DNI approved for exemption as "operational," the List provides no basis on which the Court might assess "the thoroughness evident in [the defendant's] consideration" of what files to deem exempt or "the

---

[9](...continued)
would "not be considered operational").

validity of its reasoning,"[10] Skidmore, 323 U.S. at 140.  As neither party has pointed to any prior

action by the defendant to designate records as exempt operational files, this Court, like the

ACLU Court, is unable to evaluate the Designation List's "consistency with earlier and later

pronouncements," Skidmore, 323 U.S. at 140.  Consequently, the only remaining Skidmore

factor the Court can assess is "the persuasiveness of [the defendant's] arguments, a factor that

[the Court would] take into consideration in any event," ACLU, 351 F. Supp. 2d. at 269 (internal

quotation marks omitted).  Therefore, the Court will conduct its de novo review of the NRO's

interpretation of the scope of § 432a's operational files exemption without affording the

defendant any formal deference.  See id.

### III.  Legal Analysis

The NRO Director and the DNI are empowered by § 432a to exempt NRO files both

from disclosure and from the FOIA's search and review procedure so long as the files in

question satisfy the definitions of "operational files" contained in the statute.  50 U.S.C. §

432a(a).  Section 432a(a)(2)(A) defines "operational files" as "files of the [NRO] that document

the means by which foreign intelligence or counterintelligence is collected through scientific and

technical systems."  The statute creates several exceptions to this definition; however, only two

---

[10] In particular, nothing in the Designation List sheds any light on the reasons for which the NRO
determined particular types of files to qualify as exempt "operational files."  See Def.'s Mem., Ex. 6.  Neither the
cover memorandum from NRO Director Teets to then-DCI Tenet, see id. at 1, nor the List itself, see id. at 2-5,
explain the process by which the NRO identified categories of files for inclusion on the List.  Indeed, as the amicus
notes, see Am. Br. at 7-8, the breadth of the categories deemed exempt seemingly would include the vast majority of
the NRO's files.  The List's introductory section does state that "[o]nly records that address operational
aspects/programs/ activities of the NRO are exempt," id. at 2, which might indicate that the NRO meant to exempt
only those files which, because of their particular content, satisfy § 432a(a)(2)(A)'s definition of "operational files."
However, Director Teets' cover memorandum makes clear that the NRO considered everything included on the List
to be exempt under § 432a.  See Def.'s Mem., Ex. 6 at 1 ("[A]ll of these files [listed in the Designation List]
document the means by which foreign intelligence or counterintelligence is collected through scientific and technical
systems. . . . Upon [Director Tenet's] approval, [the NRO] will begin treating these files as operational files within
the meaning of [§ 432a].").  Accordingly, the Court is left to conclude that the decision about what files fall under
the operational files exemption was not made with a degree of care and thoughtfulness that otherwise would entitle it
to some degree of deference.

are pertinent here:  § 432a(a)(2)(B), which states that "[f]iles which are the sole repository of disseminated intelligence are not operational files," and § 432a(a)(4)(D), which provides that "[r]ecords from exempted operational files which have been disseminated to and referenced in files that are not exempted . . . and which have been returned to exempted operational files for sole retention shall be subject to search and review."

The Court concludes that the second of these exceptions, § 432a(a)(4)(D), is applicable to the CBJB.  Consequently, the Court need not address the issue of whether the CBJB meets the threshold definition of "operational files" in § 432a(a)(2)(A), because even if the CBJB did "document the means by which foreign intelligence or counterintelligence is collected through scientific and technical systems," it would nonetheless be subject to search and review pursuant to § 432a(a)(4)(D).  Accordingly, the Court concludes that the CBJB is not shielded by § 432a's exemption from the FOIA's search and review requirements and that the defendant must disclose those parts of the CBJB that are subject to release under 5 U.S.C. § 552.[11]

## A.  Sole Repository of Disseminated Intelligence

Section 432a expressly excludes from exemption any "[f]iles which are the sole repository of disseminated intelligence," 50 U.S.C. § 432a(a)(2)(B), even if such files otherwise meet the definition of "operational" under § 432a(a)(2)(A).  The parties agree that the CBJB has been "disseminated," Pl.'s Mem. at 3, Ex. 1 ¶¶ 3-7, Ex. 2; Def.'s Mem. at 7 & Ex. 1 ¶ 15; Def.'s Reply at 7, although they dispute whether the CBJB is the "sole repository" of the information it contains.[12]  Even if the CBJB were the sole repository of the information contained therein,

---

[11] Because the parties have not raised the issue of which portions of the CBJB would be subject to release under the FOIA, the Court need not address that question at this juncture.

[12] The defendant argues that the CBJB is not the sole repository of its contents, as it is a compilation of information contained in other documents, including budget submissions.  Def.'s Mem. at 6-7 & Ex. 1 ¶ 15; Def.'s

(continued...)

however, it would not fit within the exception set forth in § 432a(a)(2)(B) because it does not

contain "intelligence."[13]

As noted above, pursuant to § 432a(a)(6)(B)(iv)(I), the defendant may meet its burden by

"demonstrating to the [C]ourt by sworn written submission that exempted operational files likely

to contain responsive records currently perform the functions" of operational files as defined by

§ 432a(a)(2). To this end, the defendant offers the sworn written declaration of the NRO Deputy

---

[12](...continued)

Reply at 7. In response, the plaintiff argues that while the CBJB itself may not be the sole repository of its contents, "the exempted operational files in which the CBJB is contained are the sole repository of such information." Pl.'s Reply at 3 (emphasis in original). According to the plaintiff, "[i]f the requested information in the 2006 CBJB existed outside of an operational file, Defendant would have been obliged to process it under [the] FOIA," but because the "[d]efendant has not done so," the information it contains "is solely retained in operational files." Id.

It is not clear whether the term "sole repository" in § 432a(a)(2)(B) means the single copy of a specific file in existence anywhere or, alternatively, whether the term excepts from the "operational file" exemption those files containing information found only within themselves and other operational files. On the one hand, the statute's language—though not crystal clear—seems to suggest that only if an otherwise properly designated operational file is the single compilation containing one or more particular items of intelligence is that compilation subject to the "sole repository" exception. If this were the meaning of §432a(a)(2)(B), however, the NRO could conceivably prevent the exception contained in that subsection from applying to any NRO files by duplicating all operational files that are the sole repository of disseminated intelligence. On the other hand, the defendant itself points to the legislative history of the corresponding portion of § 431 indicating that the exception applies to any operational file containing disseminated intelligence located only within it and other operational files. Def.'s Mem. at 7. And, because the statute does not answer this question by its plain language, the Court is not barred from examining such legislative history. See Goldring ex rel. Anderson v. District of Columbia, 416 F.3d 70, 74-75 (D.C. Cir. 2005). Specifically, according to the defendant,

> the House Intelligence Committee explained that Congress was concerned with the very rare case where intelligence products of extremely sensitive sources were maintained solely by the same entity which collected the information and disseminated directly to policy makers, without being shared or stored in the file of any other intelligence component.

Def.'s Mem. at 7 (citing H.R. Rep. 98-726(I), 1984 U.S.C.C.A.N. 3741 p. 19). At a minimum, this seems compatible with an interpretation of § 432(a)(2)(B) under which operational files satisfy the exception whenever they contain disseminated intelligence not found anywhere other than within one or more operational files of the relevant agency. Because the Court concludes that the CBJB does not contain information that qualifies as intelligence, it need not resolve whether the CBJB is the sole repository of the information it contains.

[13] For purposes of the National Security Act, 50 U.S.C. §§ 401-442a, "the term 'intelligence' includes foreign intelligence and counterintelligence." 50 U.S.C. § 401a(1). "Foreign intelligence" refers to "information relating to the capabilities, intentions, or activities of foreign governments or elements thereof, foreign organizations, or foreign persons, or international terrorist activities," 50 U.S.C. § 401a(2), while "counterintelligence" consists of "information gathered and activities conducted to protect against espionage, other intelligence activities, sabotage, or assassinations conducted by or on behalf of foreign governments or elements thereof, foreign organizations, or foreign persons, or international terrorist activities," 50 U.S.C. § 401a(3).

Director for Administration, Pamela S. Tennyson, who states that "[t]he CBJB includes detailed information on the means and methods used to collect intelligence; it does not, however, contain intelligence." Def.'s Mem., Ex. 1 ¶ 15. While the sworn written submission offered by the defendant provides nothing but a definitive assertion that the CBJB does not contain intelligence, the statute expressly precludes the Court from ordering the NRO to examine the contents of the CBJB unless the plaintiff comes forward with "a sworn written submission based on personal knowledge or otherwise admissible evidence" demonstrating that the CBJB does contain intelligence. 50 U.S.C. § 432a(a)(6)(B)(iv)(II).

Here, the plaintiff offers nothing in his pleadings or declarations to contradict the defendant's position that the CBJB does not contain intelligence.[14] Because the plaintiff has not disputed the defendant's position with the support of either sworn written statements based on personal knowledge or other admissible evidence, the Court cannot require the NRO to review the CBJB to determine if any parts of it must be disclosed under the FOIA. Instead, the Court must rely solely on the sworn written submissions put forward by the defendant. Thus, the Court concludes that the CBJB, while concededly disseminated, does not contain intelligence even if it is the sole repository of its contents, and therefore is not subject to the exception set forth in § 432a(a)(2)(B).

---

[14] Indeed, it would be almost impossible for the plaintiff, as an outsider to the NRO, to meet the burden imposed by § 432a(a)(6)(B)(iii)-(iv). Presumably, the plaintiff could not possess personal knowledge as to the contents of the CBJB without first having viewed the document. And while a plaintiff may, as here, solicit a sworn statement from an individual who had examined the CBJB, the fact that it remains classified would prevent the plaintiff from obtaining such a statement detailing the document's contents. Thus, where a plaintiff has been unable to view the classified document, he cannot make any assertions on personal knowledge that it does or does not contain intelligence, and a plaintiff situated as the plaintiff here would never be able to rebut the agency's position that a document it has exempted as an operational file is not subject to the exception set forth in § 432a(a)(2)(B). Once again, to the extent that a case is found in this posture, making such a stringent demand of a petitioner seems contrary to the policies underlying the FOIA and to the apparently narrow scope of § 431 and §432a. Nonetheless, the Court must apply the statute as written and leave to Congress the task of addressing this seeming contradiction.

**B.  Records Disseminated from but Returned to Operational Files**

One other exception to the definition of operational files is pertinent here and has been addressed at length by the parties and the amicus.  Pursuant to § 432a(a)(4)(D), "[r]ecords from exempted operational files which have been disseminated to and referenced in files that are not exempted under [§ 432a(1)] and which have been returned to exempted operational files for sole retention shall be subject to search and review."  The plaintiff and the amicus contend that the CBJB falls under this exception.  Pl.'s Opp. at 4-5; Pl.'s Reply at 3-4; Am. Br. at 16-17.  While the defendant concedes that the CBJB was disseminated, Def.'s Mem. at 7 & Ex. 1 ¶ 15, Def.'s Reply at 7, it insists that "[t]he CBJB has not been disseminated to and referenced in any other file," but rather "has been disseminated to Congress as an exempt operational file," Def.'s Reply at 7.

The plaintiff asserts that the defendant's position hinges on the incorrect assumption that the CBJB is a file, as opposed to a record within a larger file.  Pl.'s Reply at 2-3.[15]  The Court is not persuaded that this distinction is as significant as the plaintiff suggests.  To be sure, § 432a(a)(4)(D) does refer to records, not files, and thus would seem to be inapplicable here if the CBJB were demonstrably a file.  The statute, however, neither defines nor distinguishes "record" or "file" in this regard, and neither party has offered any reason why the CBJB could not be characterized as either a record, a file, or both.  Moreover, the practical difference with respect to § 432a(a)(4)(D) appears minimal.  If the CBJB itself is a record, as the plaintiff contends, then it satisfies the predicate of § 432a(a)(4)(D), which limits the scope of the exception to records.  If,

---

[15] The defendant does assert that the CBJB constitutes a file, but it offers no basis for this characterization.  See Def.'s Mem. at 5-7.  While the amicus does not explicitly make a distinction between records and files, it appears to consider the CBJB to be a record contained within certain sets of NRO files.  See, e.g., Am. Br. at 5 (stating that "[i]t is not disputed that the records sought in [the plaintiff's] FOIA request are contained in budgetary files" of the NRO).

17

on the other hand, the CBJB itself is a file consisting of multiple records, as the defendant

argues, then there is no reason under the statute why each of those individual records would be

eligible for the § 432a(a)(4)(D) exception.

In any event, the crucial question here is not whether the CBJB is either a file or a record,

but whether the NRO can circumvent the exception created by § 432a(a)(4)(D) by disseminating

an entire exempt operational file.  According to the defendant, this is what the NRO has done in

this case, i.e., the CBJB is an exempt operational file, and the NRO has simply provided copies

of that exempt file to members of Congress and other officials within the executive branch.

Def.'s Reply at 7.  Consequently, the defendant argues that while the CBJB has been

disseminated, it has never been disseminated to a non-exempt file or "referenced in" such a file,

and therefore has retained its exempt status notwithstanding § 432a(a)(4)(D).[16]

---

[16] In support of this argument, the defendant cites the legislative history of the identical exception in § 431, as described in ACLU, 351 F. Supp. 2d at 273-74:

> The legislative history explains that this paragraph "concerns the CIA practice of using marker references, referred to as 'dummy copies,' in the dissemination of particularly sensitive records from operational files." H.R.Rep. No. 98-726, pt. 1, at 32. In these circumstances, the sensitive record is temporarily removed, shown to an intended recipient, and returned to the operational file for exclusive storage; in addition, a marker reference, typically a piece of paper with a brief description of the subject matter and storage site of the sensitive record, is put in the file of the reader.  Id.  The legislative history explains that [S]ection 431(d)(3) ensures that "when [the] CIA is searching a non-exempted file for records responsive to [a] FOIA request and locates a marker reference which substitutes for a record in an exempted operational file which may be responsive, the CIA must retrieve the record from the exempted operational file and process it in response to the FOIA request." Id.  Thus, even "particularly sensitive records," by virtue of having been disseminated or identified beyond their originating operational files, become subject to FOIA search and review, subject always to later proof of specifically available FOIA exemption.

Id.  When viewed against this background, the defendant argues, it is clear that the exception in § 432a(a)(4)(D) was created to address a specific agency practice quite removed from the budget request process at issue here.  Def.'s Reply at 7-8.  Because the Court concludes that § 432a(a)(4)(D) is not ambiguous, it need not rely on the legislative history of § 431 to provide guidance as to Congress's intent.  See Goldring, 416 F.3d at 74-75.  To the extent that Congress intended the § 432a(a)(4)(D) exception to apply only in the circumstances detailed in ACLU, it has fallen short of that objective by the language it employed in creating this exception.

The Court cannot agree with this position.  As noted already, the FOIA places the burden on the defendant to demonstrate that records it has withheld are properly exempted from public disclosure.  5 U.S.C. § 552(a)(4)(B).  While § 432a entitles the NRO to meet this burden with sworn written submissions based on personal knowledge of the content of files it seeks to exempt, § 432a(a)(6)(B)(iv)(I), those submissions must show that the NRO has properly designated the disputed files as exempt operational files not subject to the various exceptions set forth in § 432a(a)(2) or (4).

Here, however, as the sworn written submission of Deputy Director Tennyson makes clear, the "CBJB was disseminated to the DNI for approval and for inclusion in the President's budget."  Def.'s Mem., Ex. 1 ¶ 15 (emphasis added); id. ¶ 14 (stating that the CBJB "is included in the President's budget submission for the Intelligence Community").   Because the defendant does not assert that the President's budget is an operational file exempted under § 432a(a)(1), dissemination of and reference to the CBJB in the Budget satisfies the exception set forth in § 432a(a)(4)(D).  While the plaintiff has not offered sworn written submissions on personal knowledge or other admissible evidence showing that the CBJB has been disseminated to a non-operational file, it need not do so, as the defendant has not met its burden of showing that the CBJB is not among those files which § 432a(a)(4)(D) excludes from the universe of operational files.

Having itself offered evidence indicating that the CBJB was disseminated to a non-exempt, non-operational file, the defendant has also failed to show by sworn written submissions or other evidence that the CBJB was not "returned to exempted operational files for sole

retention," § 432a(a)(4)(D).[17]  Indeed, as the plaintiff argues, Pl.'s Opp. at 5, if the CBJB or the information contained therein were available from the NRO's non-operational files, those files would have been subject to search and review under the FOIA.  The defendant's refusal even to examine the materials requested by the plaintiff, on the sole ground that the CBJB is an operational file exempt from search and review, belies any suggestion that the CBJB, having been disseminated to Congress and included in the President's budget, was returned to any NRO files other than its exempt operational files.  The defendant has, therefore, failed to show by its sworn submissions that the CBJB does not fall within the exception created by § 432a(a)(4)(D). Thus, it has not met its FOIA burden under 5 U.S.C. § 552(a)(4)(B) of "establishing the applicability of the claimed exemption," <u>Assassination Archives</u>, 334 F.3d at 57.

### IV.  Conclusion

Regardless of whether or not the CBJB qualifies as an operational file as defined in § 432a(a)(2)(A), the Court concludes that it is subject to search and review under the FOIA, as the defendant's own sworn written submissions foreclose its position that the exception contained in § 432a(a)(4)(D) does not apply.  The defendant has therefore not met its burden of showing that the CBJB, even if it does "document the means by which foreign intelligence or counterintelligence is collected through scientific and technical systems," 50 U.S.C. § 432a(a)(2)(A), is not subject to search and review in light of § 432a(a)(4)(D).  The Court thus finds that the CBJB is not protected by § 432a's exemption from the FOIA's search and review requirements, and the defendant must therefore perform these tasks and disclose those parts of

---

[17] Notably, § 432a(a)(4)(D) refers to "sole retention," as distinct from § 432a(a)(2)'s language which refers to a "sole repository."  It is not clear, and the parties do not address, whether "sole retention" reflects a broader concept than "sole repository."

the CBJB which must be released under 5 U.S.C. § 552.  Accordingly, the plaintiff's motion for

summary judgment is granted, and the defendant's motion for summary judgment is denied.

      **SO ORDERED** this 24th day of July, 2006.[18]

                                   REGGIE B. WALTON
                                   United States District Judge

---

[18] An Order consistent with the Court's ruling accompanies this Memorandum Opinion.